Morton E. Cole v. Commissioner. Cyril Cole and Jean E. Cole v. Commissioner.
Cole v. Commissioner
Docket Nos. 4868-70 and 4869-70.
United States Tax Court
T.C. Memo 1972-177; 1972 Tax Ct. Memo LEXIS 83; 31 T.C.M. (CCH) 870; T.C.M. (RIA) 72177; August 16, 1972
*83 Held: The payment by petitioners' partnership of weekly compensation to petitioners' sister Beatrice in excess of the maximum number of weeks provided by the Connecticut Workmen's Compensation Act and the payment of the travel expenses of Beatrice and her sister Ethel did not constitute expenses incurred as an obligation under the Connecticut Workmen's Compensation Act, and such expenses were not deductible by the partnership under section 162, I.R.C. 1954. Morton E. Cole, 1 Constitution Plaza, Hartford, Conn., for the petitioners. David W. Winters, for the respondent. 871 IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined the following deficiencies in the income taxes of petitioners: Taxable
Docket
Year
No.
Petitioner
Ended
Deficiency
4868-70
Morton E. Cole
2-28-66
$ 85.98
2-28-67
1,021.88
2-29-68
895.46
4869-70
Cyril and Jean E. Cole
2-28-65
1,474.57
2-28-66
358.30
2-28-67
1,642.53
2-29-68
1,199.88
*84 Petitioners have conceded respondent's disallowance of travel and entertainment expenses during the years in issue. Accordingly, the sole issue for determination is whether alleged workmen's compensation payments made by the law partnership comprised of Morton E. Cole and Cyril Cole for the benefit of Beatrice F. Cole are deductible as ordinary and necessary expenses under section 162. [1]
Findings of Fact Some of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioners Cyril Cole and Jean E. Cole are husband and wife whose residence at all pertinent times was in West Hartford, Conn. For the taxable years in issue they filed joint income tax returns with the district director of internal revenue, Hartford, Conn.
Petitioner Morton E. Cole (Morton) also resided at all pertinent times in West Hartford, Conn., and filed his individual income tax returns for the relevant taxable years with the district director of internal revenue, Hartford, Conn.
Hereafter the term petitioners will refer to Cyril Cole and Morton E. Cole. *85 Petitioners are brothers and during the periods involved herein were partners in the law firm of Cole and Cole, Hartford, Conn., with the following distributive shares: Taxable
Year Ended
Morton E. Cole
Cyril Cole
2-28-65
10%
90%
2-28-66
45%
55%
2-28-67
40%
60%
2-29-68
45%
55%
The partnership returns of Cole and Cole for the taxable years ended February 28, 1965, February 28, 1966, February 28, 1967, and February 29, 1968, were filed with the district director of internal revenue, Hartford, Conn.
Beatrice F. Cole (Beatrice) is the sister of Morton and Cyril Cole. The partnership returns filed for the periods involved herein contained deductions for alleged uninsured workmen's compensation payments as follows: Taxable
Year Ended
Amount
2-28-65
$ 7,795.56
2-28-66
2,903.93
2-28-67
7,212.16
2-29-68 6,238.03
$24,149.68 All of these amounts were expended to or for the benefit of Beatrice F. Cole, as follows: Taxable Year Ended February 28, 1965
Travel Related
Payee
Amount
Indicated Purpose
Beatrice F. Cole
$ 180.00
Luggage
American Airlines
570.90
Mexico
American Airlines
40.44
Mexico and Florida
American Airlines
1,786.30
Europe and Israel
American Airlines
326.56
Florida
Beatrice F. Cole
1,152.92
Mexico and Florida
Beatrice F. Cole
1,459.61
Europe
Beatrice F. Cole 700.83
Florida *03$6,217.56
Medical
Payee
Amount
Indicated Purpose
Dr. Milton J. Cole
$ 18.00 *03Examination
Weekly Payments - 52 weeks at $30
Payee
Amount
Period
Beatrice F. Cole
$1,560.00 *032-26-64 - 2-28-65
Taxable Year Ended February 28, 1966
Travel Related
Payee
Amount
Indicated Purpose
American Airlines
$ 978.08
Hawaii
American Airlines
45.28
Hawail
American Airlines
17.11
Hawaii
Beatrice F. Cole 1,038.46
Hawaii *03$2,078.93
Weekly Payments - 27.5 weeks at $30
Payee
Amount
Period
Beatrice F. Cole
$ 825.00 *032-26-65 - 9-18-65
Taxable Year Ended February 28, 1967
Travel Related
Payee
Amount
Indicated Purpose
American Airlines
$ 389.20
Puerto Rico-Miami
American Airlines
1,310.04
Hawaii
Beatrice F. Cole
703.01
Puerto Rico-Miami
Beatrice F. Cole 2,559.91
Hawaii-Puerto Rico *03$4,962.16
Weekly Payments - 75 weeks at $30
Payee
Amount
Period
Beatrice F. Cole
$2,250.00 *039-19-65 - 2-27-67
Taxable Year Ended February 29, 1968
Travel Related
Payee
Amount
Indicated Purpose
American Airlines
$ 388.00
None
American Airlines
1,291.80
None
American Airlines
.94
None
American Airlines 214.64
None *03$1,895.38
Unidentified
Payee
Amount
Beatrice F. Cole *03$2,749.53
Medical
Payee
Amount
Indicated Purpose
Dr. Milton J. Cole
$ 35.00 *03Examination
Weekly Payments - 52 weeks at $30
Payee
Amount
Period
Beatrice F. Cole
$1,560.00
2-28-67 - 2-20-68
*86 872 Those amounts designated as travel related expenses were expended in relation to travels of Beatrice F. Cole and her sister, Ethel Cole, as a traveling companion. From sometime in 1937 until October 3, 1949, Beatrice F. Cole (hereinafter Beatrice) was employed by Cole and Cole as the office manager. About January 12, 1946, while in the course of her employment Beatrice ran up a flight of stairs and suffered a heart attack. Dr. Myron M. Radom was summoned and he diagnosed Beatrice's underlying condition as essential hypertension caused by the stress of her work. He recommended that she take a leave of absence from her job. Beatrice took a trip to Cuba and returned to work in the spring of 1946 with her condition improved greatly. On September 20, 1949, and on October 3, 1949, Beatrice suffered additional heart attacks while at work. Dr. Radom 873 attributed her attacks to the stress of her job and recommended that she leave her job permanently as her hypertension would be continuing and would not improve. Dr. Radom further prescribed that Beatrice take an extended trip in order to keep her mind away from the tensions of the office and that she take a companion *87 with her on these trips who could summon help if Beatrice became incapacitated. On the advice of her doctors, Beatrice never returned to work after October 3, 1949, at which time she was about 56 years old. During the period extending from the time that she quit her job through the time of trial Beatrice has taken numerous trips with her sister Ethel Cole as a traveling companion. The expenses of both of the Cole sisters were paid by Cole and Cole as a workmen's compensation benefit to Beatrice F. Cole. At the time of trial Beatrice and her sister were traveling in Israel. The stated medical purpose of these trips was to spare Beatrice the hardships of the Connecticut winter and to insulate her from the pressures of the job that she quit in 1949. Although Cole and Cole did a substantial amount of business in the workmen's compensation area, at the time that Beatrice was injured it did not carry insurance covering its risks under the Connecticut Workmen's Compensation Law. In addition, it did not have in effect a plan of self-insurance. Accordingly, Cole and Cole was required to pay benefits directly to an employee injured in the course and scope of his employment that were at least *88 equal to those provided by law. At the time of Beatrice F. Cole's injury in 1949, Cole and Cole was obligated to pay an injured employee who was permanently disabled compensation equal to one-half of the employee's average weekly wage (up to $32 per week) for 624 weeks plus necessary medical expenses. On February 1, 1951, Cole and Cole entered into an "AGREEMENT AS TO COMPENSATION" with Beatrice F. Cole under which it agreed to pay her $30 per week plus medical expenses. On February 27, 1958, Cole and Cole and Beatrice entered into a "STIPULATION FOR AN AWARD BY AGREEMENT" which contained the following language in pertinent part: 4. The Claimant has been provided with all medical treatment at the expense of the Respondent in accordance with the Workmen's Compensation Act, who has fully complied with the Act to date. 4. (a) The Claimant claims that she will be totally disabled for the rest of her life and will require considerable future medical treatment and attention of an expensive nature including changes of scenery, climate or locale from time to time. 4. (b) Whereas the Respondent desires to terminate and settle once and for all its legal liability to the claimant for *89 the payment of compensation and medical expenses and for payment of past and future compensation for the total sum of $5,000, together with the Respondent's promise and agreement to pay all travel and other expenses of the Employee in seeking needed rest or change of locale, climate, or environment to treat or alleviate her condition, including the like expenses of any accompanying nurse or travelling companion, until September 19, 1961, which amount or expense will be considerably less than the exposure of the Respondent to the Claimant. The award by stipulation was accepted on March 3, 1958, by Leo J. Noonan, the Connecticut compensation commissioner for the district in which Beatrice F. Cole resided. On August 25, 1961, Cole and Cole and Beatrice entered into an "AGREEMENT TO RE-OPEN, CLARIFY, AND CORRECT AWARD BY STIPULATION" dated February 27, 1958, and approved March 3, 1958, the pertinent terms of which were the following: 14. Furthermore, the Respondent-Employer is presently obligated to pay full weekly compensation of $32 for the balance of the statutory period of six hundred twenty-four (624) weeks, which balance starting on August 25, 1961 amounts to two hundred eleven *90 and one-half (211.5) weeks of additional compensation. 15. As the Respondent-Employer under our Workmen's Compensation Act is legally obligated to pay for all medical treatment, and expenses incurred in connection with or incidental to said treatment for the life of the injured employee, and, since it is the opinion of the doctors who have attended her, all of whom are of high reputation in the community and in their profession and specialties, that it is necessary for the treatment and alleviation of the Plaintiff's condition of health, and to provide the best means of preventing her death due to the condition of her health attributable to her occupational injury or disease, that she take extended periods of rest in warm climates during 874 winters and changes of locale, climate, or environment to treat and alleviate her condition by taking extended vacations or travel periods, including any type of entertainment or amusement which might tend to lessen her tension or high blood pressure which presently continues and is likely to continue to a dangerous degree if not alleviated or treated; and that the Claimant-Employee be at all times accompanied by a nurse or travelling companion *91 in whom she has full confidence, such as her sister Ethel Cole, the Respondent-Employer is to continue to pay all travel and other expenses of the Claimant-Employee in seeking the aforesaid rest, changes, and including the expenses of any accompanying nurse, travelling companion, or her sister for the rest of the life of the Claimant-Employee or until such time as the Claimant's condition of health should improve completely, which improvement is not reasonably likely to occur in the opinion of her doctors. On August 29, 1961, Commissioner Noonan approved the agreement to reopen. It is not the practice of the Workmen's Compensation Commission of Connecticut to investigate the underlying facts of a case when a stipulated or agreed award involving an uninsured employer is presented for approval. The concern of the commission is merely to see that benefits at least equal to those provided by law are paid by the uninsured employer to his employee. Opinion Petitioners are brothers and also partners in a law firm. In 1949 the firm employed petitioners' sister Beatrice as an office manager. Her job became too emotionally and physically taxing and she suffered two heart attacks in the *92 fall of 1949. Beatrice's doctor recommended that she quit her job permanewntly and that she take a long vacation in order to get away from the pressures of her job. Beatrice followed her doctor's advice well. From the time that she quit her job through the date of trial she took regular vacations accompanied by her sister Ethel. All of the expenses of both travelers were paid by the law firm. During the years in issue petitioners' law firm paid the costs of travel for Beatrice and Ethel, provided medical care for Beatrice's heart problems, and made weekly payments of compensation to Beatrice. The law firm treated all of these expenses as obligations imposed by the Workmen's Compensation Act of Connecticut and deducted them under section 162. Respondent increased petitioners' distributive shares of partnership income by disallowing the deductions attributable to Beatrice and Ethel's travel and to the medical care and compensation provided Beatrice. Respondent does not deny that expenses incurred as a result of the operation of workmen's compensation laws are deductible under section 162; however, he contends that petitioners' law firm was under no obligation to provide the benefits *93 given to Beatrice during the years in issue. Respondent bases his contention upon two claims: (1) that Beatrice was not an employee of the law firm in 1949 when she had her heart attacks; and (2) that even if she were an employee, the benefits provided by the law firm were not required by the Connecticut Workmen's Compenstion Act but were in the nature of gifts from petitioners to their sister. In addition to denying the arguments made by respondent petitioners have claimed vaguely that they are under an "illegal burden" because respondent audited their returns in prior years and led them to believe that the question of Beatrice's compensation would not be raised so long after she quit work. As petitioners have only mentioned their illegal burden without explaining why it is illegal, we only comment that the record in this case makes it evident that petitioners have benefitted greatly from respondent's failure to question the payments made on behalf of Beatrice in prior years. Respondent relies upon the fact that the Internal Revenue Service has no record of the filing of an income tax return or the payment of income tax by Beatrice or the payment of social security taxes for 1949 *94 to support his claim that she was not an employee of the law firm at the time she suffered her heart attacks. Petitioners on the other hand introduced an apparently genuine duplicate original tax return for Beatrice for 1949 as well as her employee's copies of withholding tax statements for 1949 and two prior years. Morton testified that he made out and filed Beatrice's return. Morton's testimony, though unpersuasive on other matters, did not lack such credibility that we believe the documents that he authenticated to be artificial. We see no way to reconcile the discrepancies between respondent's and petitioners' evidence concerning Beatrice's filing and payment of income taxes in 1949. In addition 875 to Morton's testimony which detailed the facts of Beatrice's job and the circumstances of her injury, petitioner introduced the uncontradicted testimony of other witnesses which tended to show that Beatrice did in fact suffer her heart attacks in the course of and arising out of employment with Cole and Cole. Accordingly, we believe that Beatrice did in fact suffer an injury while at work in the manner claimed by petitioners. At the time that Beatrice suffered her injury, Cole *95 and Cole was obligated to provide her with at least the minimum benefits provided under the Connecticut Workmen's Compensation Act. In the case of an injury causing total disability in 1949 the minimum benefits were medical treatment as needed for the disabling conditions and 624 weeks of compensation equal to one-half of the employee's average weekly wage (up to $32 per week). Cole and Cole did not carry in 1949 workmen's compensation insurance or have a plan of self-insurance. Although Morton testified vaguely to the effect that other employees of the firm received travel benefits, petitioners have not demonstrated that Cole and Cole regularly paid injured employees other than Beatrice benefits in excess of the minimum prescribed by Connecticut law. In addition, approval of the compensation commissioner for the awards to Beatrice was obtained without any review or investigation on the part of the commissioner in a nonadversary proceeding. We are in no way bound by such orders of the Connecticut compensation commissioner and may look behind them. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). We conclude that any benefits provided Beatrice which exceeded the minimum *96 requirements of Connecticut law constituted a gift on the part of petitioners and not a deductible expense. Using petitioners' own documents as a basis for computation, it is clear that Beatrice's right to receive weekly compensation expired long before the end of the last tax year here involved, February 29, 1968. The agreement to reopen dated August 25, 1961, indicates that as of that date Cole and Cole owed Beatrice a balance of 211.5 weeks of the original 624 weeks of compensation. Accordingly, Beatrice should not have received any compensation covering periods after September 14, 1965. As a matter of fact, Cole and Cole, during the taxable year ending February 28, 1966, only paid Beatrice compensation through the week ending on September 18, 1965, the first Saturday following September 14, 1965; however, in the following taxable year Cole and Cole gave Beatrice 75 weeks of compensation which made up for the period of no payments in the prior year. The fact that the law firm in one year stopped making compensation payments at about the date required by the agreement to reopen and in the following year started the payments again retroactively indicates inferentially that it knew *97 that the payments made after September 18, 1965, were gifts. In any event, the payments made after that date were not incurred as an obligation under the Connecticut Workmen's Compensation Act; therefore, we hold that the amounts of $2,250 and $1,560 paid as weekly compensation to Beatrice during the taxable years ended February 28, 1967, and February 29, 1968, respectively, are not deductible under section 162. Petitioners support the deduction of the travel expenses of Beatrice and Ethel on the grounds that Beatrice's doctors prescribed travel with a companion as treatment for her heart condition and that the orders of the Connecticut Compensation Commission required that the firm pay for such travel as medical treatment. Petitioners' medical witnesses did in fact state that they prescribed travel as treatment for Beatrice's problems because she needed to get away from the pressures of being home and because she would benefit from a warm climate in the winter. In addition, petitioners claim that the firm paid for the sisters' travel because it was advised to do so by retired Compensation Commissioner Noonan. Indeed, petitioners offered into evidence a letter from Noonan stating *98 that he had advised the firm to pay the travel expenses since "such things have been furnished claimants under the medical section of the statute from time immemorial." We have searched through Connecticut case law to find a decision which even remotely purports to grant the benefits that petitioners' sister received and we have found none. The cases cited to us by petitioners [2] as supporting their position merely 876 contain general statements that the Connecticut Workmen's Compensation Act is to be liberally interpreted in favor of workmen, and these cases on their facts and in principle have nothing at all in common with Beatrice's case. See Powers v. Hotel Bond Co., 89 Conn. 143, 93 Atl. 245 (1915)Fair v. Hartford Rubber Works, 95 Conn. 350, 111 Atl. 193 (1920); Meade v. L. G. de Felice & Son, 137 Conn. 292, 76 Atl. 2d 862 (1950). We note that both an employee in Commissioner Noonan's office and his successor in office had no knowledge of any case where the expenses of travel as medical treatment had been allowed in Connecticut. In addition, Noonan's successor indicated that the compensation commission routinely approved agreements *99 between an employee and his uninsured employer if the terms of the agreement were favorable to the employee. We are skeptical of the statements of petitioners' medical witnesses that Beatrice's heart condition required her to travel with a companion in sunny climes. The witnesses did not indicate whether travel was a generally accepted treatment for hypertension or whether any of the specific trips were necessary. Petitioners have not shown that the nebulous benefit that she was to receive from travel, relief from tension and from the cold Connecticut winters, constituted specific treatment *100 for Beatrice's hypertension. Petitioners also have not demonstrated that other Connecticut workmen injured in the same way as Beatrice could have received similar traveling benefits in an adversary proceeding before the compensation commission or through arm's-length negotiation with their employers. Accordingly, we hold that the amounts of $6,217.56, $2,078.93, $4,962.16, and $1,895.38 paid in each of the four years in issue, respectively, with respect to the travel of Beatrice and Ethel not to be deductible under section 162. In the taxable year ended February 29, 1968, the law firm paid Beatrice the amount of $2,749.53. The record fails to disclose to what use Beatrice put this money or what business purpose of the law firm the expenditure served. This amount is also not deductible under section 162 for total want of proof that it was an ordinary and necessary expense of the firm's business. Because we have found that Beatrice was entitled to the minimum benefits provided by the Workmen's Compensation Act of Connecticut in force in 1949, the law firm was entitled to deduct amounts paid to Beatrice as weekly compensation through September 18, 1965, and amounts paid in each year *101 to her doctors for medical care. In view of the foregoing, Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. We had difficulty locating and determining the germaneness of petitioners' citations. We did find two cases from other jurisdictions which allowed expenses for a workman's change of climate. Clark v. Fedders-Quigan Corp., 284 App. Div. 430, 131 N.Y.S. 2d 575 (1954); and Levenson's Case, 346 Mass. 508, 194 N.E. 2d 103↩ (1963). In both of these cases the Florida sun had a clearer therapeutic effect upon the claimants' ailments than merely relieving their tension. Expenses of a traveling companion were not allowed. There are no Connecticut citations to these two cases.